TROY LAW, PLLC
John Troy (JT 0481)
Aaron B. Schweitzer (AS 6369)
41-25 Kissena Boulevard, Suite 103
Flushing, NY 11355
(718) 762-1324
troylaw@troypllc.com
*Attorneys for Plaintiff and proposed FLSA Collective*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------x
LIANG RUI PANG,
*on behalf of himself and others similarly situated,*
                                       Plaintiff,

                      v.

FLYING HORSE TRUCKING CO LTD,
SEN MIAO INC,
FLYING TIGER LOGISTICS INTERNATIONAL CO LTD,
SHEN MAO LLC,
WEI WANG,
WEI ZHANG,
ZHANG WEI,
GEORGE LI,
CHARLIE DOE,
                                       Defendants.
-----------------------------------------------------------------x

Case No. 20-cv-06387

**29 U.S.C. § 216(b)**
**COLLECTIVE ACTION**
**& FED. R. CIV. P. 23**
**CLASS ACTION**

**COMPLAINT**

**JURY TRIAL**
**DEMANDED**

Plaintiff Liang Rui Pang (hereinafter "Pang"), on behalf of himself and others similarly situated, by and through his attorneys, Troy Law, PLLC, hereby brings this Complaint against Defendants Flying Horse Trucking Co Ltd, Sen Miao Inc, Flying Tiger Logistics International Co Ltd, and Shen Mao LLC (hereinafter the "Corporate Defendants"), Wei Wang, Wei Zhang, Zhang Wei, George Li, and Charlie Doe (hereinafter the "Individual Defendants") (collectively with the Corporate Defendant the "Defendants"), and alleges as follows:

**INTRODUCTION**

1.     Pang brings this action on behalf of himself and other similarly situated employees against Defendants for violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et*

*seq.*, and of the New York Labor Law ("NYLL"), N.Y. Lab. L., arising from Defendants' various willful, malicious, and unlawful employment policies, patterns, and/or practices.

2. Pang alleges pursuant to FLSA that he is entitled to recover from the Defendants: (1) unpaid minimum wages, (2) liquidated damages, (3) prejudgment and postjudgment interest, and/or (4) reasonable attorneys' fees and costs.

3. Pang further alleges pursuant to NYLL and Section 142 of Title 12 of the New York Codes, Rules, and Regulations (the "Wage Order") that he is entitled to recover from Defendants: (1) unpaid minimum wages, (2) unpaid overtime, (3) liquidated damages, (4) penalties for failure to provide a wage notice at time of hire, (5) penalties for failure to provide wage statements with each payment of wages, (6) prejudgment and postjudgment interest, and (7) reasonable attorneys' fees and costs.

## JURISDICTION AND VENUE

4. This Court has subject-matter jurisdiction over this controversy under Section 216(b) of the FLSA and Section 1331 of Title 28 of the United States Code.

5. This Court has supplemental jurisdiction over Pang's state-law claims under Section 1367, Subsection (a) of Title 28 of the United States Code.

6. Venue is proper in the United States District Court for the Eastern District of New York pursuant to Section 1391, Subsections (b) and (c) of Title 28 of the United States Code, because Defendants conduct business in the Eastern District of New York, and because the acts and omissions giving rise to the claims alleged herein took place within the Eastern District of New York.

## PLAINTIFF

7. Pang was employed by the Defendants from in or about October 2018 through on or about March 11, 2020 to work as a truck driver for Defendants' freight hauling business.

## DEFENDANTS

**CORPORATE DEFENDANTS**

8. Flying Horse Trucking Co Ltd is a domestic business corporation with a registered address for service of process at 136-40 39th Avenue, Suite 508T, Flushing, NY 11354 and principal places of business at 617 Acorn Street, Deer Park, NY 11729.

9. Flying Horse Trucking Co Ltd was during the period relevant to this lawsuit a business with gross annual revenue in excess of $500,000.00..

10. Flying Horse Trucking Co Ltd is a business engaged in interstate or foreign commerce, as it provided truck haulage service between New York on the one hand and Texas and California, among other states, on the other.

11. Sen Miao Inc is a domestic business corporation with a registered address for service of process at 148-17 58th Avenue, Flushing, NY 11355.

12. Sen Miao Inc was during the period relevant to this lawsuit a business with gross annual revenue in excess of $500,000.00, as it operates a single enterprise with Flying Horse Trucking Co Ltd, which itself had gross annual revenue in excess of $500,000.00 during the period relevant to this lawsuit.

13. Sen Miao Inc is a business engaged in interstate or foreign commerce, as it operates a single enterprise with Flying Horse Trucking Co Ltd, which itself was a business engaged in interstate commerce during the period relevant to this lawsuit.

14. Flying Tiger Logistics International Co Ltd is a domestic business corporation with a registered address for service of process and principal place of business at 136-68 Roosevelt Avenue, Suite 606, Flushing, NY 11354.

15. Flying Tiger Logistics International Co Ltd was during the period relevant to this lawsuit a business with gross annual revenue in excess of $500,000.00, as it operates a single

enterprise with Flying Horse Trucking Co Ltd, which itself had gross annual revenue in excess of $500,000.00 during the period relevant to this lawsuit.

16. Flying Tiger Logistics International Co Ltd is a business engaged in interstate or foreign commerce, as it operates a single enterprise with Flying Horse Trucking Co Ltd, which itself was a business engaged in interstate commerce during the period relevant to this lawsuit.

17. Shen Mao LLC is a domestic limited liability company with a registered address for service of process at 617 Acorn Street, Second Floor, Deer Park, NY 11729.

18. Shen Mao LLC was during the period relevant to this lawsuit a business with gross annual revenue in excess of $500,000.00, as it operates a single enterprise with Flying Horse Trucking Co Ltd, which itself had gross annual revenue in excess of $500,000.00 during the period relevant to this lawsuit.

19. Shen Mao LLC is a business engaged in interstate or foreign commerce, as it operates a single enterprise with Flying Horse Trucking Co Ltd, which itself was a business engaged in interstate commerce during the period relevant to this lawsuit.

**INDIVIDUAL DEFENDANTS**

20. The Individual Defendants are officers, directors, managers and/or majority shareholders or owners of the Corporate Defendant and being among the ten largest shareholders and/or LLC members, are individually responsible for unpaid wages under the New York Business Corporation Law and Limited Liability Company Law. NYBSC § 630(a), NYLLC § 609(c).

21. Charlie Doe (1) had the authority to hire and fire employees, (2) supervised and controlled employee work schedules and conditions of employment, (3) determined employees' rates and methods of payment, and (4) kept employment records.

22. Charlie Doe hired Pang, supervised Pang, paid Pang his wages, and fired Pang.

4

23. Charlie Doe acted intentionally and maliciously and is an employer within the meaning of Section 203 Subsection (d) of the FLSA, Section 791.2 of Title 29 of the Code of Federal Regulations, and Section 2 of the New York Labor Law, and is jointly and severally liable with Corporate Defendants.

24. Wei Wang is the person on whom the New York Department of State will serve process on behalf of Flying Horse Trucking Co Ltd and Sen Miao Inc, is registered as the Secretary of Flying Horse Trucking Co Ltd in the state of Missouri, and an owner, an officer, and the secretary of Flying Horse Trucking Co Ltd, and in those roles (1) had the authority to hire and fire employees, (2) supervised and controlled employee work schedules and conditions of employment, (3) determined employees' rates and methods of payment, and (4) kept employment records.

25. Wei Wang acted intentionally and maliciously and is an employer within the meaning of Section 203 Subsection (d) of the FLSA, Section 791.2 of Title 29 of the Code of Federal Regulations, and Section 2 of the New York Labor Law, and is jointly and severally liable with Corporate Defendants.

26. Wei Zhang is the Chief Executive Officer of Flying Tiger Logistics International Co Ltd, the person on whom the New York Department of State will serve process on behalf of and Shen Mao LLC, is registered as a director and the President of Flying Horse Trucking Co Ltd in the state of Missouri, and is listed as an officer, the Secretary, and the President of Flying Horse Trucking Co Ltd, and in those roles (1) had the authority to hire and fire employees, (2) supervised and controlled employee work schedules and conditions of employment, (3) determined employees' rates and methods of payment, and (4) kept employment records.

27. Wei Zhang acted intentionally and maliciously and is an employer within the meaning of Section 203 Subsection (d) of the FLSA, Section 791.2 of Title 29 of the Code of

Federal Regulations, and Section 2 of the New York Labor Law, and is jointly and severally liable with Corporate Defendants.

28. Zhang Wei is an officer and the Secretary of Flying Horse Trucking Co Ltd, and in that role (1) had the authority to hire and fire employees, (2) supervised and controlled employee work schedules and conditions of employment, (3) determined employees' rates and methods of payment, and (4) kept employment records.

29. Zhang Wei acted intentionally and maliciously and is an employer within the meaning of Section 203 Subsection (d) of the FLSA, Section 791.2 of Title 29 of the Code of Federal Regulations, and Section 2 of the New York Labor Law, and is jointly and severally liable with Corporate Defendants.

30. George Li is an officer of Flying Horse Trucking Co Ltd and Sen Miao Inc, and in that role (1) had the authority to hire and fire employees, (2) supervised and controlled employee work schedules and conditions of employment, (3) determined employees' rates and methods of payment, and (4) kept employment records.

31. George Li acted intentionally and maliciously and is an employer within the meaning of Section 203 Subsection (d) of the FLSA, Section 791.2 of Title 29 of the Code of Federal Regulations, and Section 2 of the New York Labor Law, and is jointly and severally liable with Corporate Defendants.

## STATEMENT OF FACTS

**CORPORATE DEFENDANTS OPERATE A SINGLE ENTERPRISE**

32. Corporate Defendants share common management and ownership in the persons of Wei Wang (Flying Horse Trucking Co Ltd and Sen Miao Inc), Wei Zhang (Flying Horse Trucking Co Ltd, Flying Tiger Logistics International Co Ltd, and Shen Mao LLC), and George Li (Flying Horse Trucking Co Ltd and Sen Miao Inc).

33. Flying Horse Trucking Co Ltd and Shen Mao LLC operate a single freight hauling business concurrently, out of the same premises at 617 Acorn Street, Deer Park, NY 11729.

34. Control of labor relations the enterprise's labor relations was centralized in the person of Charlie Doe, who worked at 617 Acorn Street, Deer Park, NY 11729.

**FACTS OUT OF WHICH PLAINTIFFS' CLAIMS ARISE**

35. Pang was employed by the Defendants from in or about October 2018 through on or about March 11, 2020 to work as a truck driver for Defendants' freight hauling business.

36. Pang was hired in or about October 2018 by Charlie Doe.

37. At the time he was hired, Pang was not given a wage notice, either in English or in his primary language of Chinese, that included all of the following information: his rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any 'doing business as' names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer.

38. Pang was not given such a wage notice at any time during his employment after his hiring.

39. Pang was required to form the corporation Langrui Group Inc, to which part of his wages were paid.

40. However, Pang was treated as an employee, not an independent contractor.

41. Pang was also paid part of his wages directly, and provided W-2 forms for those wages.

7

42. Furthermore, in response to Pang filing a workers' compensation claim, Flying Horse Trucking Co Ltd did not include among its denials why Pang should not receive workers' compensation a Denial Code 3A, claiming that there was no employer-employee relationship, or 3B, claiming that Pang was an independent contractor.

43. Pang drove a circuit between New York, Texas, and California.

44. Pang's circuit typically, about 80% of the time, took 5 days' driving to complete, and Pang would have the other two days in the week off. About 10% of the time, the circuit took 6 days to complete and Pang would have 1 day in the week off. About 10% of the time, the circuit took 7 days to complete and Pang would have to begin a new circuit the day after arriving back in New York, with no day off.

45. Pang would be paired with another driver.

46. Pang drove approximately 11 hours per day, the other driver would drive approximately 11 hours per day.

47. While the other driver was driving, Pang would rest in the truck's cab, and vice versa.

48. Each time the drivers switched who was driving and who was resting, they both had to conduct a safety inspection on the truck. Each inspection took about 1 hour, and there were two inspections per day.

49. Pang was required to be on duty 24 hours per day each day he worked.

50. Accordingly, Pang was required to be on duty 120 hours per week 80% of the time, 144 hours per week 10% of the time, and 168 hours per week 10% of the time.

51. Under Section 785.22(a) of Title 29 of the Code of Federal Regulations, Defendants were required to pay Pang for 16 hours each day because he was required to be on duty for 24 hours per day.

52. However, Defendants only paid Pang for the miles he logged driving: $0.06 per mile logged, divided evenly between Pang and his partner, so Pang was actually paid $0.03 per mile logged.

53. In so doing, Defendants deprived Pang of pay for about 4 hours' worth of miles each day to which he was entitled, failed to pay him for 2 hours each day when the truck was stationary and being inspected during driver changes, and deprived him of minimum wage under FLSA and NYLL.

54. Further, Defendants' payment of a flat per-mile rate deprived Pang of the overtime and spread of time pay he was due under the Wage Order.

55. Pang was paid every half-month. Between about $900.00 and about $1,000.00 of his pay was paid by check to Langrui Group Inc, and between about $1,300.00 and about $1,600.00 was paid to Pang directly.

56. As a consequence of their paying part of Pang's wages to the corporation they required him to form, and part of Pang's wages to him directly, Defendants failed to provide Pang a wage statement with each payment of wages listing the following: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; and net wages.

57. On about March 11, 2020, at about 11:00 Central Time, having left New York on March 10, 2020 at about 11:10, Pang suffered a stroke while he was driving in Missouri. He was hospitalized until March 13, 2020.

58. As a consequence, Charlie Doe fired Pang.

59. Defendants committed the foregoing acts knowingly, intentionally, willfully, and maliciously against Pang, the Collective, and the Class.

## COLLECTIVE ALLEGATIONS

60. Pang brings this action individually and on behalf of all other current and former non-exempt workers employed by Defendants over the three years preceding the filing of this Complaint, through entry of judgment in this case (the "Collective").

## CLASS ALLEGATIONS

61. Pang brings his state-law claims as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of all other current and former non-exempt workers employed by Defendants over the six years preceding the filing of this Complaint, through entry of judgment in this case (the "Class").

62. The Class members are readily ascertainable. The Class members' number, names, addresses, positions held, hours assigned and worked, and rates of pay are determinable from Defendants' records. Notice can be provided by means permissible under Rule 23.

### NUMEROSITY

63. The Class is so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court.

64. Although the precise number of such persons is unknown, and the facts on which the calculation of the precise number are presently within the sole control of Defendants, upon information and belief, there are more than 40 members of the Class.

### COMMONALITY

65. There are questions of law and fact common to the Class which predominate over any questions affecting individual members, including: (1) whether Defendants employed the Class members within the meaning of New York law; (2) whether the Class members were paid less than the minimum wage; (3) whether the Class members were paid an extra hour's pay at the minimum wage for each day their spread of time exceeded 10 hours; (4) whether the Class members paid expenses out of pocket, were promised reimbursement, and were not reimbursed; (5) whether the Class members were provided with wage notices adequate under Section 195.1 of the NYLL; (6) whether the Class members were provided with wage statements adequate under Section 195.3 of the NYLL; and (7) at what common rate, or rates subject to common method of calculation, were and are Defendants required to pay Class members?

### TYPICALITY

66. Pang's claims are typical of those claims which could be alleged by any Class member, and the relief sought is typical of the relief that would be sought by any Class member in a separate action.

67. All the Class members were subject to the same policy and practice of denying minimum wage.

68. Defendants' policy and practice affected all Class members similarly, and Defendants benefitted from the same type of unfair and/or wrongful acts as to each Class member.

69. Pang and the other Class members sustained similar losses, injuries, and damages arising from the same unlawful policy and practice.

### ADEQUACY

70. Pang is fairly and adequately able to protect the interests of the Class and has no interests antagonistic to the Class.

71. Pang is represented by attorneys who are experienced and competent in representing plaintiffs in both class actions and wage-and-hour employment litigations.

**SUPERIORITY**

72. A class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage-and-hour litigation where individual Class members lack the financial resources to vigorously prosecute a lawsuit against a corporate defendant.

73. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of efforts and expenses that numerous individual actions engender.

74. Because the losses, injuries and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them.

75. Further, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs.

76. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of Class members' rights and the disposition of their interests through actions to which they were not parties.

77. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

78. Upon information and belief, Defendants and other employers throughout the state violate the New York Labor Law.

79. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation.

80. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment.

81. Class actions provide class members who are not named in the complaint a degree of anonymity which allows for the vindication of their rights while eliminating or reducing these risks.

## CAUSES OF ACTION

### I. VIOLATION OF SECTION 206 SUBSECTION A OF THE FLSA NONPAYMENT OF MINIMUM WAGE—BROUGHT ON BEHALF OF THE PLAINTIFF AND THE COLLECTIVE

82. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

83. Section 206, Subsection (a) of the FLSA provides that "[e]very employer shall pay to each of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, wages at… $7.25 an hour, beginning 24 months after [the] 60th day [after May 25, 2007]."

84. Pang was not paid anything for about four hours' worth of miles each day to which he was entitled.

13

85. Accordingly, Defendants paid Pang less than the federal minimum wage throughout his employment.

86. Section 216 of the FLSA provides that "[a]ny employer who violates the provisions of section 206… of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages… and in an additional equal amount as liquidated damages," and further provides that "[t]he court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and the costs of the action."

87. Defendants knowingly, willfully, and maliciously disregarded the provisions of the FLSA by failing to pay Pang at least the minimum wage.

## II.   VIOLATION OF SECTION 652 OF NYLL & 142-2.1 OF WAGE ORDER NONPAYMENT OF MINIMUM WAGE—BROUGHT ON BEHALF OF THE PLAINTIFF AND THE CLASS

88. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

89. Section 652.1, Subsection (b) of the NYLL provides that "[e]very employer shall pay to each of its employees for each hour worked in the counties of Nassau, Suffolk, and Westchester a wage of not less than… $12.00 per hour on and after December 31, 2018, [and] $13.00 per hour hon and after December 31, 2019."

90. Similarly, Section 142-2.1, Subsection (a), Paragraph (1), Subparagraph (i) of the Wage Order provides that "The basic minimum hourly rate shall be, for each hour worked in New York City for large employers of eleven or more employees, $15.00 per hour on and after December 31, 2018."

91. Throughout his employment, Pang's pay per mile multiplied by the number of miles for which he was paid per week amounted to less than $15.00 per hour.

92. Further, Pang was not paid anything for about four hours' worth of miles each day to which he was entitled.

93. Accordingly, Defendants paid Pang less than the applicable New York minimum wage for throughout his employment.

94. Section 198, Subsection 1-a of the NYLL provides that "[i]n any action instituted in the courts upon a wage claim by an employee… in which the employee prevails, the court shall allow such employee to recover the full amount of any underpayment, all reasonable attorney's fees, prejudgment interest as required under the civil practice law in rules, and, unless the employer proves a good faith basis to believe that its underpayment of wages was in compliance with the law, an additional amount as liquidated damages equal to one hundred percent of the total amount of the wages found to be due."

95. Defendants knowingly, willfully, and maliciously disregarded the provisions of the NYLL by failing to pay Pang at least the minimum wage.

### III. VIOLATION OF SECTION 142-2.2 OF THE WAGE ORDER NONPAYMENT OF OVERTIME—BROUGHT ON BEHALF OF PLAINTIFF AND THE CLASS

96. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

97. Section 142-2.2 of the Wage Order provides in relevant part that "an employer shall pay employees subject to the exemptions of section 13 of the Fair Labor Standards Act, as amended, except employees subject to section 13(a)(2) and (4) of such Act [both of which have been repealed], overtime at a wage rate of one and one-half times the basic minimum hourly rate."

98. Pang was solely paid a per-mile rate and was not paid overtime at a rate one and one-half times the minimum wage.

99. Section 198, Subsection 1-a of the NYLL provides that "[i]n any action instituted in the courts upon a wage claim by an employee… in which the employee prevails, the court shall allow such employee to recover the full amount of any underpayment, all reasonable attorney's fees, prejudgment interest as required under the civil practice law in rules, and, unless the employer proves a good faith basis to believe that its underpayment of wages was in compliance with the law, an additional amount as liquidated damages equal to one hundred percent of the total amount of the wages found to be due."

100. Defendants knowingly, willfully, and maliciously disregarded the provisions of the NYLL by failing to pay Pang at least the minimum wage.

## IV. VIOLATION OF SECTION 142-2.4 OF THE WAGE ORDER FAILURE TO PAY SPREAD-OF-TIME—BROUGHT ON BEHALF OF THE PLAINTIFF

101. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

102. Section 142-2.4 of the Wage Order provides that "[a]n employee shall receive one hour's pay at the basic minimum hourly wage rate, in addition to the minimum wage required in this Part for any day in which: (a) the spread of hours exceeds 10 hours; or (b) there is a split shift; or (c) both situations occur."

103. Section 198, Subsection 1-a of the NYLL provides that "[i]n any action instituted in the courts upon a wage claim by an employee… in which the employee prevails, the court shall allow such employee to recover the full amount of any underpayment, all reasonable attorney's fees, prejudgment interest as required under the civil practice law in rules, and, unless the employer proves a good faith basis to believe that its underpayment of wages was in compliance with the law, an additional amount as liquidated damages equal to one hundred percent of the total amount of the wages found to be due."

104. Pang regularly worked a spread of time of greater than 10 hours between 5 and 7 days per week.

105. Defendants knowingly, willfully and maliciously failed to pay Pang an additional hour's pay at the basic minimum hourly wage for each day she worked a spread of time greater than 10 hours.

**V.   VIOLATION OF SECTION 195.1 OF THE NYLL FAILURE TO FURNISH WAGE NOTICE—BROUGHT ON BEHALF OF THE PLAINTIFF**

106. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

107. Section 195.1(a) of the NYLL provides that "[e]very employer shall provide his or her employees, in writing in English and in the language identified by each employee as the primary language of such employee, at the time of hiring, a notice containing the following information: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer in accordance with section one hundred ninety-one of this article; the name of the employer; any 'doing business as' names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; plus such other information as the commissioner deems material and necessary."

108. Section 198, Subsection 1-b of the NYLL provides that "[i]f any employee is not provided within ten business days of his or her first day of employment a notice as required by subdivision one of section on hundred ninety-five of this article, he or she may recover in a civil action damages of fifty dollars for each work day that the violations occurred or continue to occur, but not to exceed a total of five thousand dollars, together with costs and reasonable attorney's

fees. The court may also award other relief, including injunctive or declaratory relief, that the court in its discretion deems necessary and appropriate."

109. Pang was not provided a wage notice as provided by Section 195.1 of the NYLL within the first 10 business days of his employment or at any time thereafter.

110. Defendants knowingly, willfully and maliciously failed to provide Pang a wage notice as provided by Section 195.1 of the NYLL within the first 10 business days of his employment or at any time thereafter.

### VI. VIOLATION OF SECTION 195.3 OF NYLL FAILURE TO FURNISH WAGE STATEMENTS—BROUGHT ON BEHALF OF THE PLAINTIFF

111. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

112. Section 195.3 of the NYLL provides that "[e]very employer shall furnish each employee with a statement with every payment of wages, listing the following: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; and net wages. For all employees who are not exempt from overtime compensation as established in the commissioner's minimum wage orders or otherwise provided by New York state law or regulation, the statement shall include the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked[;] and the number of overtime hours worked."

113. Pang was not furnished a wage statement with each payment of wages.

114. Defendants knowingly, willfully and maliciously failed to furnish Pang a wage statement as provided by Section 195.3 of the NYLL with each payment of wages.

## **DEMAND FOR TRIAL BY JURY**

115.    Pang demands a trial by jury on all matters so triable.

## **PRAYER FOR RELIEF**

WHEREFORE, Pang, on behalf of himself and on behalf of the Collective, respectfully requests that this Court enter a judgment providing the following relief:

A.    At the earliest practicable time giving notice of this collective action, or authorizing Plaintiff to give notice of this collective action, to all persons who are presently, or have up through the extent allowable under the statute of limitations and including the date of the notice's issuance, been employed by Defendants as non-exempt restaurant workers. Such notice shall inform such employees that this lawsuit has been filed, of the nature of this lawsuit, and of their right to join this lawsuit if they believe they were denied overtime pay;

B.    A declaratory judgment that the practices complained of herein are unlawful under FLSA and NYLL;

C.    An injunction against Corporate Defendant, its owners, officers, agents, successors, employees, representatives, and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices and policies set forth herein;

D.    An award of unpaid minimum wages, and liquidated damages equal to unpaid minimum wages, due to Plaintiff and any opt-ins under FLSA;

E.    An award of unpaid minimum wages, and liquidated damages equal to unpaid minimum wages, due to Plaintiff and the Class under NYLL and the Wage Order;

F.    An award of unpaid overtime, and liquidated damages equal to unpaid overtime, due to Plaintiff and any opt-ins under FLSA;

G.    An award of unpaid overtime, and liquidated damages equal to unpaid overtime, due to Plaintiff and the Class under NYLL and the Wage Order;

H. An award of misappropriated tips, and liquidated damages equal to misappropriated tips, due to Plaintiff and any opt-ins under FLSA;

I. An award of misappropriated tips, and liquidated damages equal to misappropriated tips, due to Plaintiff and the Class under NYLL and the Wage Order;

J. An award of unpaid spread-of-time, and liquidated damages equal to unpaid spread-of-time, due to Plaintiff and the Class under the NYLL and the Wage Order;

K. An award of up to $5,000.00 per Plaintiff and per Class member as a penalty for failure to furnish Plaintiff and the Class members with a wage notice at time of hire or thereafter;

L. An award of up to $5,000.00 per Plaintiff and per Class member as a penalty for failure to furnish Plaintiff and the Class members with a wage statement with each payment of wages;

M. An award of prejudgment interest at a rate of 9 percent *per annum* pursuant to Section 5004 of the New York Civil Practice Law and Rules;

N. An award of reasonable attorneys' fees and costs;

O. An Order that, to the extent that any amounts remain unpaid upon the expiration of 90 days following the issuance of judgment, or 90 days after expiration of the time to appeal, no appeal then being pending, whichever is later, the total amount of judgment shall automatically increase by 15 percent, as required by Section 198, Paragraph 4 of the NYLL; and

P. Any such other and further legal or equitable relief as the Court may deem necessary, just, and proper.

Dated: Flushing, NY
December 31, 2020

TROY LAW, PLLC
*Attorneys for Plaintiff and proposed FLSA Collective*
 /s/ John Troy
John Troy